IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01904-NYW-SBP

DAVID UHL,

    Plaintiff,

v.

PROGRESSIVE DIRECT INSURANCE COMPANY,

    Defendant.

---

**ORDER ON MOTION TO COMPEL (ECF No. 41)**

---

**Susan Prose, United States Magistrate Judge**

    In this first-party insurance case, Plaintiff David Uhl brings claims of bad faith against his insurer Defendant Progressive Direct Insurance Company ("Progressive"), alleging that it unreasonably delayed payment of uninsured motorist ("UM") benefits under his policy. This matter is before the court on Progressive's Motion to Compel, ECF No. 41 ("Motion" or "Motion to Compel"), after it was referred to the undersigned magistrate judge for resolution pursuant to 28 U.S.C. § 636(b).[1] ECF No. 42. Additionally, the court agreed to conduct an in camera review of several notes from Progressive's claim file and related emails associated with Mr. Uhl's claim to determine whether those materials are discoverable.

---

[1] Additionally, Mr. Uhl has filed a Motion to Supplement, ECF No. 46 ("Motion to Supplement"), seeking leave to submit additional evidence and arguments regarding Progressive's claims of attorney-client privilege and work product. The court **GRANTS** the Motion to Supplement and considers the materials and arguments raised in that motion and Progressive's response thereto, ECF No. 52.

1

For the reasons articulated below, the Motion to Compel is **GRANTED in part** and **DENIED in part**. Mr. Uhl is directed to respond to the written discovery requests at issue, with the exception of information protected by the physician-patient privilege under Colorado law. The court finds that the documents submitted for in camera review are protected from discovery by the attorney-client privilege.

## BACKGROUND

### I. Relevant Factual and Procedural History

On July 5, 2022, Mr. Uhl was involved in a motorcycle accident. *See* ECF No. 4 ("Complaint") ¶ 6. Mr. Uhl claims that the accident occurred after he swerved to avoid another vehicle, *id.* ¶ 14, and sought UM benefits under his policy with Progressive. *See id.* ¶ 10.

Throughout its review of Mr. Uhl's claim, Progressive appears to have had questions about Mr. Uhl's entitlement to UM benefits. In its briefing on the Motion to Compel, Progressive points to information indicating Mr. Uhl's seemingly evolving recollection of the accident. Mr. Uhl initially claimed that he could not remember how the accident occurred, but later told his daughter that he fell off his motorcycle while swerving to avoid a deer. Deposition of James Kern, ECF No. 41-1 ("Kern Depo.") at 58:13-59:15. According to Progressive, it was only after Mr. Kern, the claims specialist assigned to Mr. Uhl's claim, spoke with Mr. Uhl and explained the terms of the policy—that UM benefits were unavailable unless another *vehicle* caused the accident, *see* Colorado Motorcycle Policy, ECF No. 41-5 at 2[2]—that Mr. Uhl claimed he

---

[2] Per the policy provision governing "Uninsured/Underinsured Motorist Bodily Injury Coverage," Progressive agreed to "pay for damages that an insured person is legally entitled to recover from the owner or operator of an *uninsured motor vehicle or an underinsured motor vehicle* because of bodily injury . . . ." ECF No. 41-5 at (emphasis added).

2

swerved to avoid another vehicle. *See* Kern Depo. at 57:13-58:6.

Notwithstanding these alleged inconsistencies, on December 7, 2022, Progressive gave Mr. Uhl "the benefit of the doubt" and made a "business decision" to pay him $500,000—the maximum UM benefits available under his policy. Motion at 2; Kern Depo. at 44:5-14, 167:3-10. However, Progressive did not make that payment until April 2023, after Mr. Uhl's attorney issued a demand for payment of all UM benefits. *See* Complaint ¶¶ 40, 42; *see also* Motion at 2. Progressive states that, during the period from December 2022 to April 2023, it was evaluating issues regarding potential liens from third parties on any benefits paid to Mr. Uhl. *See* Motion at 2; *see also* Kern Depo. at 60:7-22.[3]

On June 22, 2023, Mr. Uhl filed suit against Progressive in Colorado state court, raising common law and statutory bad faith claims. *See* Complaint ¶¶ 53-63. On July 26, 2023, Progressive removed the action to this court. Notice of Removal, ECF No. 1. Progressive filed an Answer, which, in relevant part, asserts as affirmative defenses that (1) Mr. Uhl's claims are subject to and limited by all terms, conditions, limitations, and exclusions of his policy and (2) Mr. Uhl failed to submit evidence and reasonable proof of coverage. ECF No. 16 at 3-4.

II.   **Outstanding Discovery Disputes**

Earlier this year, the parties invoked the court's informal discovery dispute resolution procedures concerning multiple discovery disputes, two being the discovery sought in the Motion to Compel and the production of certain notes and emails in Progressive's claim file. On February 12, 2024, the court held a hearing on the discovery disputes. At the end of the hearing,

---

[3] For purposes of resolving the Motion, the court need not address the substantive question of whether this passage of time evinces bad faith on Progressive's part.

3

the court directed Progressive to file the Motion to Compel and submit the notes and emails for in camera review. *See* ECF No. 40.

    A.    **Motion to Compel**

On January 10, 2024, Mr. Uhl submitted responses to Progressive's First Set of Interrogatories, ECF No. 41-3, and First Set of Requests for Production ("RFPs"), ECF No. 41-4. As relevant here, Mr. Uhl refused to provide substantive responses to the following discovery requests (collectively, "Discovery Requests"), all of which relate to the question of his entitlement to UM benefits in the first instance:

> **Interrogatory No. 8**: Describe the route that you followed from the beginning of your trip to the location of the **ACCIDENT**, and state the location of each stop, other than routine traffic stops, during the trip leading up to the **ACCIDENT**.
>
> **Interrogatory No. 9**: Describe in your own words and with particularity how the **ACCIDENT** occurred and provide speeds, directions and locations.
>
> **RFP No. 1**: Copies of any and all medical records from any and all health care providers who have treated or examined the plaintiff as a result of the **ACCIDENT** and the plaintiff's injuries.
>
> **RFP No. 5**: Copies of any and all documentation in the possession of the plaintiff, Sandra Uhl and/or Michelle Curtis Johnson relating to the **ACCIDENT** and/or the plaintiff's claim for uninsured/underinsured motorist benefits.
>
> **RFP No. 9**: Copies of all documentation relating to the plaintiff's claim for benefits from USAA as a result of the **ACCIDENT**.

The Motion to Compel asks the court to direct Mr. Uhl to respond to these Discovery Requests.

Mr. Uhl's refusal to provide responses to the Discovery Requests hinges on his contention that his entitlement to UM benefits is irrelevant to any claim or defense in this case. As support for this position, Mr. Uhl relies on the decisions of the Colorado Supreme Court in *Schultz v.*

4

*GEICO Casualty Co.*, 429 P.3d 844 (Colo. 2018), and *State Farm Mutual Automobile Insurance Co. v. Brekke*, 105 P.3d 177 (Colo. 2005), which he asserts stand for the proposition that the underlying question of whether an insured is entitled to benefits is not material when the insured has alleged only bad faith, and the insurer has already paid the full extent of benefits available under a policy. ECF No. 51 ("Response") at 3-7; *see also, e.g.*, ECF No. 41-4 at 1-2 (asserting that RFP No. 5 is neither relevant nor proportional because, "[p]rior to litigation, Defendant determined and advised plaintiff it determined that the injuries were caused by the tortious conduct of an uninsured motorist and that it determined Plaintiff's injuries and damages he was 'legally entitled to collect' under Colorado law were valued at or above his policy limits and has already paid Plaintiff the policy limits of $500,000 without any reservation whatsoever") (citing *Schultz* and *Brekke*). In making this argument, Mr. Uhl delves into related issues such as waiver and estoppel, emphasizing what he deems to be uncontradicted evidence that Progressive paid Mr. Uhl under the policy without making a reservation of rights. Response at 7-13.

In addition to these arguments, Mr. Uhl maintains that the RFPs seek records that are protected by the physician-patient privilege. *Id.* at 13-15. With regard to that privilege, as articulated in Colorado law,[4] Mr. Uhl asserts that he has not placed his medical condition at issue in this case and therefore has not waived his statutorily-created privilege regarding personal medical information. *Id.*[5]

---

[4] Because subject matter jurisdiction in this matter is based on diversity, the court applies Colorado law regarding privilege. Fed. R. Evid. 501.

[5] Mr. Uhl also asserts, in a somewhat cursory fashion in a footnote, that RFP No. 5—which seeks documents in the possession of Plaintiff, Sandra Uhl, and Michelle Curtis Johnson related to the accident and Mr. Uhl's claim for UM benefits—would "likely" implicate the attorney-client

5

Progressive takes the position that *Schultz* is inapplicable and that this court should instead be guided to the Tenth Circuit's decision in *Giertz v. State Farm Mutual Automobile Insurance Co.*, No. 22-1114, 2023 WL 3728197 (10th Cir. May 26, 2023), which Progressive describes as holding that a bad faith claim under Colorado law requires a plaintiff to prove bad faith **and** that he or she is entitled to benefits. *See generally* Motion at 9-15. Progressive contends as well that the Discovery Requests are proper because they may elicit evidence that bolsters or detracts from a witness's credibility. *Id.* at 8.

Additionally, Progressive emphasizes that it has narrowed the scope of two RFPs. First, it has limited its request for medical records in RFP No. 1 to only those "where [Mr. Uhl] provided history to his medical providers relating to how the accident occurred and [his] ability to remember events relating to same." *Id.* at 5. Second, Progressive has cabined RFP No. 5 to documents in Mr. Uhl's care, custody, and control "pertaining to how the accident occurred or [his] UM claim." *Id.*

B.  **Documents Submitted for In Camera Review**

Progressive provided Mr. Uhl with a redacted version of the internal file used to investigate and evaluate his claim. Progressive redacted two of the notes in the claim file and several emails associated with those notes[6] on the grounds that they contain attorney-client privileged communications and attorney work product. Generally, the notes reflect the substance

---

privilege. Response at 14 n.9. However, because Mr. Uhl did not respond to the Discovery Requests and has not generated a privilege log, at this point, there are no concrete privilege assertions for this court to assess. In connection with his responses to the Discovery Requests, as required by this Order, Mr. Uhl shall provide a privilege log.

[6] The notes at issue can be found at Bates #DEF DISC 00906 and are dated April 5 and 6, 2023. The emails are dated the same and can be found at Bates #DEF DISC 00908-00911.

6

of the emails between Mr. Kern and Travis D. Weitzel, corporate claims counsel for Progressive, discussing various legal issues regarding the potential for third parties to assert liens on any benefits paid to Mr. Uhl.

Initially, Mr. Uhl asked the court to conduct an in camera review of the notes and emails to confirm that Progressive's assertions of privilege and work product were proper, but he now takes a different position with his Motion to Supplement. There, Mr. Uhl argues that Progressive has waived any claim of privilege or work product. Motion to Supplement at 4-5. He maintains that David Werber—an insurance expert serving as a retained expert for Progressive—opined that the delay in paying Mr. Uhl was reasonable because Progressive needed to ascertain its obligations under the Federal Medical Care Recovery Act ("FMCRA"), 42 U.S.C. § 1651 *et seq.*, before paying benefits to Mr. Uhl.[7] *Id.* at 2-3. Mr. Uhl points out that FMCRA is not mentioned in the unredacted portions of the claim file and argues that the factual basis for Mr. Werber's opinion therefore must be found in the notes and emails. *Id.* From this, Mr. Uhl insists that any privilege has been waived because Progressive has offered an expert whose opinion is factually premised on information contained in the notes and emails. *Id.* at 3-5.

Progressive responds that these arguments lack merit because Mr. Werber did not review the notes and emails when formulating his opinion. ECF No. 52 at 5 ("Mr. Werber did not review or rely on any of the privileged attorney-client and attorney-work product documentation listed

---

[7] For context, Mr. Uhl is a veteran and had medical insurance through Tricare (the federal government's health insurance program for veterans), which paid for some or all of his medical expenses after the accident. Progressive represents that it believed that the United States, via Tricare, was one of the third parties with a potential lien on Mr. Uhl's benefits under the policy. *See* ECF No. 52 at 2-3.

7

on Progressive's privilege log that is the subject of this discovery dispute when formulating his opinions. Rather, Mr. Werber's opinions were founded on his review of the discovery in this case, including the disclosures from the parties and depositions that were available prior to the February 12, 2024 discovery hearing."). Progressive further argues that it has not asserted advice of counsel as an affirmative defense and that, in any event, only Progressive—as the holder of the privilege (as opposed to a third-party retained expert like Mr. Werber)—can waive it. *Id.* at 5-6. Finally, Progressive asserts that an insurance company's consultation with an attorney on an issue related to the adjustment of a claim is generally not an "affirmative act" that waives the attorney-client privilege. *Id.* at 5-6 (citing *Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2020 WL 6119962, at *10-11 (D. Colo. Oct. 15, 2020)).

## LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a).

Relevance under Rule 26(b)(1) is "broadly construed," and a request is considered relevant "if there is 'any possibility' that the information sought may be relevant to any party's claim or defense." *Byron-Amen v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-02364-NYW,

8

2022 WL 1567563, at *2 (D. Colo. May 18, 2022) (quoting *Martensen v. Koch*, 301 F.R.D. 562, 570 (D. Colo. 2014)); *Brackett v. Walmart Inc.*, No. 20-cv-01304-KLM, 2021 WL 1749975, at *3 (D. Colo. May 4, 2021) ("[R]elevance is not so narrowly construed as to limit a story to its final chapter, and neither party is entitled to make it impossible for all meaningful parts of the story to be told."). As for proportionality, "[t]he Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations." *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 275 (D. Colo. 2022) (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment"). Generally, when the requested discovery appears relevant on its face, "the party resisting discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under [Rule 26(b)(1)], or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) (quotation omitted).

Rule 26(b)(2)(C) allows a court to limit discovery if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or may be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(j)-(iii). And "[t]he court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense" from an otherwise relevant discovery request. Fed. R. Civ. P. 26(c)(1).

9

Finally, "[d]iscovery rulings are within the broad discretion of the trial court, and [the Tenth Circuit Court of Appeals] will not disturb them absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Kenno v. Colo. Governor's Off. of Info. Tech.*, No. 21-1353, 2023 WL 2967692, at *7 (10th Cir. Apr. 17, 2023) (cleaned up, quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1386 (10th Cir. 1994)), *cert. denied*, 144 S. Ct. 696 (2024), *reh'g denied*, 144 S. Ct. 1088 (2024). "[T]he district court's determinations regarding waiver of attorney-client privilege and work product protection" are reviewed "for abuse of discretion." *Harte v. Bd. of Comm'rs of Cnty. of Johnson, Kan.*, 940 F.3d 498, 522 (10th Cir. 2019); *see also S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (discovery rulings are reviewed for abuse of discretion).

### A.   Relevance

The dispute at the center of the Motion to Compel is whether Mr. Uhl's entitlement to benefits is at issue in this case. If it is, then the discovery sought by Progressive is relevant. But if, as is Mr. Uhl's view, his entitlement to benefits is not at issue, then Progressive seeks discovery that would have no bearing on this case. The parties' arguments place the seemingly incompatible (at least that is how the parties portray it`) decisions by the Colorado Supreme Court in *Schultz* and the Tenth Circuit in *Giertz* front and center. In essence, the parties have asked the court to decide which of these two approaches defines the substantive elements of this case. As Mr. Uhl sees it, *Schultz* held that when a case simply involves a claim of bad faith—i.e., there is no breach of contract claim saying that coverage was wrongly denied—an insured's entitlement to benefits is not at issue and any discovery on that topic is not relevant. *See* 429 P.3d

10

at 849. Progressive, by contrast, seizes on the language in *Giertz* which states that a bad faith claim necessarily includes entitlement to benefits as an essential element. *See* 2023 WL 3728197, at *3.

In asking this court to determine the scope of relevant discovery by choosing between the *Schultz* and *Giertz* approaches and deciding whether Mr. Uhl's entitlement to benefits is an issue in this case, the parties invite this court to wade into the merits. While the scope of discovery cannot be wholly divorced from the merits of a case, a discovery motion is not the proper vehicle to hash out merits-based arguments. Indeed, courts consistently decline to assess such arguments when determining whether discovery is relevant. *Capture Eleven, LLC v. Otter Prods., LLC*, No. 20-cv-02551-RM-KLM, 2021 WL 12298517, at *5 (D. Colo. May 11, 2021) ("Defendants' reliance on [case law] is a merits-based argument that normally should not preclude the discovery of relevant evidence."); *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 512-13 (D. Nev. 2020) ("The Court rejects Kaskade's attempt to shoehorn his merits-based arguments into a relevance objection. . . . That Kaskade believes he will prevail in defeating or limiting that defense through merits-based arguments presented in future dispositive motion practice does not render irrelevant the Palms' discovery probing the facts of that currently-live defense.").[8]

---

[8] *See also, e.g.*, *Boardwalk Apartments, LLC v. State Auto Prop. & Cas. Ins. Co.*, No. 11-2714-JAR, 2013 WL 1411768, at *2 (D. Kan. Apr. 8, 2013) ("Defendant's arguments concerning the merits of plaintiff's claims are misguided and inappropriate in the context of a motion to compel[.]"); *Beaumont v. Branch*, No. 2:23-cv-03546-DCN, 2024 WL 3742755, at *44 (D.S.C. Aug. 9, 2024) ("Courts across the country agree that a party cannot refuse to engage in—and is not excused from being subjected to—discovery simply because the discovery is relevant to a claim on which the [resisting] party believes that he will or should prevail.") (cleaned up); *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. CV 19-513, 2023 WL 4139375, at *4 (E.D. Pa. June 22, 2023) ("[T]he Court declines to rule on any of Peninsula's merits-based

Declining to choose between the parties' competing merits arguments is even more prudent given that United States District Judge Nina Y. Wang already has before her Mr. Uhl's Motion for Partial Summary Judgment and accompanying briefing, in which the parties make the same substantive arguments as those raised here. *See* ECF Nos. 49 at 7-17; 53 at 10-20. It would be highly inappropriate for this court to weigh in on an issue that is ultimately Judge Wang's prerogative to decide. *Big City Dynasty*, 336 F.R.D. at 512 ("Moreover, magistrate judges are rightly reluctant to attempt to predict how a district judge might view merits-based arguments, both because a different judge may view the arguments differently and because issuance of a decision addressing the merits could prejudice the outcome on those issues.").

Progressive aptly notes that Judge Wang has yet to say that Mr. Uhl's entitlement to benefits is not an issue in this case. And given the broad scope of relevance for purposes of discovery, the court cannot find that the discovery sought by Progressive is not relevant. Thus, Mr. Uhl's refusal to respond to the Discovery Requests is not justified on relevancy grounds.

### B. Physician-Patient Privilege

Next, the court considers whether the Discovery Requests seek information that, even if relevant, is protected from discovery by the physician-patient privilege created by Colorado statute, as Mr. Uhl contends. *See* Response at 13-15.

Under Colorado Revised Statute § 13-90-107(1)(d), a patient may prevent a treating physician from disclosing information obtained in the course of treatment, and the privilege applies "equally to in-court testimony and to pretrial discovery of information." *Hoffman v.*

---

arguments and grants Penn Engineering's motion to compel. If Peninsula wants a ruling on the merits, it must seek it through the appropriate procedural channels.").

12

*Brookfield Republic, Inc.*, 87 P.3d 858, 861 (Colo. 2004). Once the privilege attaches, "the only basis for authorizing a disclosure of the confidential information is by express or implied waiver." *Id.* at 862 (quoting *Clark v. Dist. Ct., Second Jud. Dist., City & Cnty. of Denver*, 668 P.2d 3, 9 (Colo. 1983) (internal quotation marks omitted)).[9] Implied waiver occurs when "the privilege holder has injected his physical or mental condition into the case as the basis of a claim or an affirmative defense." *Weil v. Dillon Cos., Inc.*, 109 P.3d 127, 130-31 (Colo. 2005) (quoting *Clark*, 668 P.2d at 10 (internal quotation marks omitted)).

The court agrees with Mr. Uhl that he has not put his physical or mental condition at issue in this case. Even if his medical treatment records might be tangentially relevant in some respect, the Colorado Supreme Court has held that "'relevance alone cannot be the test.'" *Id.* at 131 (quoting *Johnson v. Trujillo*, 977 P.2d 152, 157 (Colo. 1999)). "Rather, the test is whether [the plaintiff] significantly injected his physical and mental condition *as the basis of his claim*." *Id.* (emphasis added) (citations omitted); *see also Hoffman*, 87 P.3d at 863 (holding plaintiff did not waive privilege "merely by seeking damages under a generic claim of mental suffering which is incidental to the physical injuries underlying the suit"). Nevertheless, the court finds that a narrow sliver of Mr. Uhl's medical records—which may or may not exist—are discoverable. The discoverable records are those where Mr. Uhl "provided history to his medical providers relating to how the accident occurred[.]" *See* Motion to Compel at 5.

The underlying purpose of the physician-patient privilege is "to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and

---

[9] There is no indication of express waiver here, so the court is left to consider whether Mr. Uhl impliedly waived privilege over his medical records.

humiliation that might be caused" through disclosure of that information. *Clark*, 668 P.2d at 8. By its very terms, § 13-90-107(1)(d) applies only to "information acquired in attending the patient *that was necessary to enable him or her to prescribe or act for the patient*." (emphasis added). In interpreting this language, the Colorado Supreme Court has been unmistakably clear: the privilege *only* covers information necessary for a physician to act or prescribe for the patient. *People v. Marquez*, 692 P.2d 1089, 1095-96 (Colo. 1984), *rejected in part on other grounds*, *James v. People*, 727 P.2d 85 (Colo. 1986) (finding that a bullet that was surgically removed from the defendant's body, and the testimony of attending medical personal concerning that fact, did not violate the defendant's physician-patient privilege). Such has been the construction of the statutory physician-patient privilege in Colorado for more than one hundred years. *See, e.g.*, *People v. Covington*, 19 P.3d 15, 19 (Colo. 2001) ("The physician-patient privilege attaches when the information acquired by the physician is necessary for the physician to 'act or prescribe for the patient.' Names, addresses, and phone numbers do not fall within the privilege because a doctor does not need them to prescribe or act on behalf of the patient.") (citing *Belle Bonfils Mem'l Blood Ctr. v. Dist. Ct.*, 763 P.2d 1003, 1009 (Colo. 1988) (internal citation omitted)); *People v. Palomo*, 31 P.3d 879, 883 (Colo. 2001) (drug screening and physical ability test results did not fall under the physician-patient privilege where neither test was "performed in order to enable a physician to treat" the defendants); *People v. Reynolds*, 578 P.2d 647, 648-49 (Colo. 1978) (noting that individual claiming sexual assault had informed her physician that "she had not fought her assailant nor sustained bodily injuries, and finding that "the trial court should have determined whether the particular information which defense counsel sought to elicit from the doctor was in fact necessary for treatment"); *Hanlon v. Woodhouse*, 160 P.2d 998, 1001 (Colo.

1945) (blood alcohol test results that were not necessary for treatment were not privileged); *Cook v. People*, 153 P. 214, 216 (Colo. 1915) (patient telling physician how he received gunshot wound and later refusal to allow physician to remove bullet was not necessary for treatment and was not privileged).

Thus, information that was not necessary to Mr. Uhl's treatment, even if obtained during the course of treatment, cannot be privileged. Evaluated pursuant to this well-established law, Progressive's request for records containing Mr. Uhl's recollection of *how* the accident occurred falls outside the scope of the physician-patient privilege. Ultimately, Progressive wants to know whether Mr. Uhl's crash resulted from the actions of another driver or not. If Mr. Uhl conveyed this information to his medical providers, there was no medical purpose to do so. The court cannot envision how the treatment of Mr. Uhl's injuries would have depended on whether he swerved to avoid a vehicle or something else, and Mr. Uhl does not articulate how the impetus for his swerving could be of any medical consequence. *See Cook*, 153 P. at 216 ("How [defendant] came to be shot" was not protected by the physician-patient privilege because it "was not necessary information to enable the doctor to prescribe or act for his patient.").

The same cannot be said, however, for Progressive's request for medical records regarding Mr. Uhl's ability to *remember* the accident. *See* Motion at 5. Records that expose Mr. Uhl's capacity to remember, and any memory loss, would implicate information that may have been used to ascertain the extent of his injuries. Therefore, Mr. Uhl's assertion of privilege forecloses this aspect of his medical records from scrutiny by Progressive.

Accordingly, the court concludes that Mr. Uhl's medical records are discoverable to the extent they contain his description of how the accident occurred.

15

**II.        Claim Notes and Emails**

Progressive asserts that the notes and emails submitted for in camera review are protected by both the attorney-client privilege and the work-product doctrine. The court has reviewed the materials and finds that they are privileged and so it foregoes an analysis of whether the documents also constitute protected work product.

Pursuant to Colorado Revised Statute § 13-90-107(1)(b), "[a]n attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment." The attorney-client privilege "is established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009).

Even where the attorney-client privilege applies, its protections are not absolute. "The client may impliedly or expressly waive the privilege that attaches to a protected communication." *Wesp v. Everson*, 33 P.3d 191, 198 (Colo. 2001). "[A] client impliedly waives the privilege when he or she (1) discloses privileged communications to a third party or (2) asserts a claim or defense focusing on advice given by the attorney, thereby placing the allegedly privileged communications at issue." *State Farm Fire & Cas. Co. v. Griggs*, 419 P.3d 572, 575 (Colo. 2018). "[T]he fact that privileged information might become relevant in a given lawsuit could not alone be enough to establish an implied waiver"; instead, it must be shown "that the client asserted a claim or defense that *depends on* privileged information." *Id.* (emphasis in original). "The burden of establishing such a waiver rests with the party seeking to

16

overcome the privilege." *Wesp*, 33 P.3d at 197.

The court's review has confirmed that the emails fall squarely in the realm of privileged legal advice. The notes summarize that advice; thus, they, too, are privileged. And the court discerns no basis to conclude that Progressive has impliedly waived the attorney-client privilege as a consequence of the opinions offered by its retained expert, as Mr. Uhl argues. *See* Motion to Supplement at 3-5. The court finds no reason to discredit Progressive's statement that Mr. Werber did not review the challenged materials in formulating his opinions, and so no implied waiver could have occurred by that means. *Cf. Jordan v. Terumo BCT, Inc.*, 550 P.3d 628, 636 (Colo. 2024), *reh'g denied* (July 1, 2024) (recognizing, in finding that the district court erred in determining that plaintiffs had waived the attorney-client privilege with regard to communications, that "for plaintiffs to have impliedly waived the attorney-client privilege over their confidential communications, they would have needed to disclose the *communications* to the expert. Nothing in the record indicates, however, and [defendant] does not appear to suggest, that the expert saw any of the communications sent from plaintiffs to their counsel.") (emphasis in original); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 293 F.R.D. 568, 574 (S.D.N.Y. 2013) ("[F]urnishing work-product of a factual nature to a testifying expert constitutes implied waiver of work-product protection to the extent that the expert considers the facts or data disclosed in forming her opinion.") (citations omitted). The court further notes that Progressive has not pleaded advice of counsel as an affirmative defense and therefore has not placed any legal advice from its counsel at issue. *See generally* Answer; *see also Griggs*, 419 P.3d at 575 ("[T]he fact that privileged information might become relevant in a given lawsuit could not alone be enough to establish an implied waiver.").

17

In sum, the court finds that the challenged notes and emails are privileged and are not discoverable.

## CONCLUSION

For the reasons set forth above, the Motion to Compel, ECF No. 41, is **GRANTED in part** and **DENIED in part**. The court respectfully orders Mr. Uhl to respond to the Discovery Requests, as Progressive has agreed to narrow them, in accordance with this Order. It is further ordered that Mr. Uhl produce an accompanying privilege log setting forth any objections that are not inconsistent with this Order. The Motion to Supplement, ECF No. 46, is **GRANTED**. This Order shall be stayed for fourteen days or until the resolution of any objection thereto.[10]

DATED: December 20, 2024                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[10] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").