**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-01904-NYW-SBP

DAVID UHL,

      Plaintiff,

v.

PROGRESSIVE DIRECT INSURANCE COMPANY,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

This is an underinsured motorist ("UM") insurance dispute arising out of a motorcycle accident that left Plaintiff David Uhl ("Plaintiff" or "Mr. Uhl") with catastrophic injuries. Plaintiff's insurer, Defendant Progressive Direct Insurance Company ("Defendant" or "Progressive"), ultimately paid policy limits on Plaintiff's UM claim with no reservation of rights. Plaintiff has filed suit alleging that Defendant unreasonably delayed payment of his benefits and acted in bad faith in the handling of his UM claim.

In Plaintiff's Motion for Partial Summary Judgment (or "Motion"), [Doc. 49], Plaintiff seeks to limit the issues for trial by requesting that this Court declare, as a matter of law, that Plaintiff is not required to establish his entitlement to the UM benefits already paid by Progressive as a prerequisite to pursuing his bad faith and unreasonable delay claims. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is **GRANTED**. In addition, Plaintiff's Motion for Leave to Amend Complaint to Assert Claim for Punitive Damages ("Motion to Amend"), [Doc. 50], is respectfully **GRANTED**.

## PROCEDURAL BACKGROUND

Plaintiff initiated this action in June 2023 by filing a Complaint and Jury Demand, in Denver County District Court.  [Doc. 4].[1]  Defendant later removed the case to the United States District Court for the District of Colorado.  [Doc. 1].  Plaintiff asserts two claims for relief:  (1) a common law claim for bad faith breach of insurance contract, and (2) a first-party statutory claim for unreasonable delay of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.  [Doc. 4 at ¶¶ 53–63].  Plaintiff seeks statutory penalties equal to two times the covered benefit unreasonably delayed; attorneys' fees and costs as authorized by Colo. Rev. Stat. § 10-3-1116; noneconomic damages; and pre- and post-judgment interest.  [*Id.* at 6–7].

Relevant here, Progressive asserts that Mr. Uhl must establish entitlement to UM benefits as a prerequisite to pursuing claims for common law bad faith and statutory delay of payment.  [Doc. 27 at 4].  According to the Second and Sixth "Affirmative Defenses" asserted in Progressive's Answer, Mr. Uhl's recovery of any benefits is "subject to and limited by all the terms, conditions, limitations, and exclusions" of the insurance policy at issue, and he has failed to submit evidence and reasonable proof of the coverage upon which his claims for recovery are founded.  [*Id.* at 4–5; Doc. 16 at 3–4].  Progressive further denies that it acted in bad faith and denies any unreasonable delay of benefits due.  [Doc. 27 at 4; Doc. 16 at 3].

---

[1] This Court uses the convention [Doc. ___] to refer to the docket number assigned by the District of Colorado's Electronic Case Filing ("ECF") system and utilizes the page number assigned by the ECF system, except in cases of citing a transcript or where original paragraph numbers are available.  In citing a transcript, the Court refers to the original page and line number, and in cases where original paragraph numbers are available, the Court cites to paragraph number.

The Parties exchanged initial disclosures on September 8, 2023.  [Doc. 27 at 6].
Five days later, the Honorable Susan B. Prose entered a Scheduling Order in this case
which established November 1, 2023, as the deadline to join parties and amend
pleadings.  [*Id.* at 8].  On March 18, 2024, Plaintiff filed the instant Motion for Partial
Summary Judgment. [Doc. 49].  Defendant filed a response to Plaintiff's Motion for Partial
Summary Judgment, [Doc. 53], to which Plaintiff replied, [Doc. 58].  In addition, on March
22, 2024, Plaintiff filed the instant Motion to Amend, seeking to add a claim for punitive
damages.  [Doc. 50].  Defendant filed its response to the Motion to Amend on April 12,
2024, [Doc. 54], and Plaintiff replied on April 26, 2024, [Doc. 59].

Accordingly, these matters are fully briefed and ripe for this Court's review.  The
Court turns first to Plaintiff's Motion for Partial Summary Judgment, and then to Plaintiff's
Motion to Amend.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

I.    **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  The movant bears the initial burden of establishing a lack of genuine
fact disputes, and, in response, the nonmovant must set forth specific facts demonstrating
that a genuine issue exists.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir.
2010).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact
could resolve the issue either way.  A fact is material if under the substantive law it is
essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d
1189, 1194 (10th Cir. 2011) (citation and quotations omitted).  In resolving a motion for
summary judgment, the court reviews the evidence in the light most favorable to the

nonmoving party, *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998), and must refrain from weighing evidence or making credibility determinations, *see Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).

## II.    Undisputed Material Facts

The below material facts are drawn from the Parties' briefing and the record before the Court and are undisputed unless otherwise noted.

1.     On July 5, 2022, Mr. Uhl sustained catastrophic injuries in a motorcycle accident in Wyoming (the "Accident"). [Doc. 49-1; Doc. 49-2; Doc. 49 at 3 ¶ 1; Doc. 53 at 1 ¶ 1].

2.     At the time of the Accident, Mr. Uhl was insured by Progressive under a motorcycle policy (the "Policy") that carried $500,000 in uninsured motorist (or "UM") coverage. [Doc. 49-3; Doc. 49 at 3 ¶ 2; Doc. 53 at 1–2 ¶ 2].

3.     Pursuant to the Policy, Progressive "will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle because of bodily injury sustained by an insured person, caused by an accident, and arising out of the ownership, maintenance, or use of an uninsured motor vehicle or an underinsured motor vehicle." [Doc. 49 at 3 ¶ 3; Doc. 53 at 2 ¶ 3]; *see also* [Doc. 49-4 at 10].

4.     Two days after the Accident, Progressive opened a UM insurance claim, assigned adjuster James Kern ("Mr. Kern") to the claim, and proceeded to investigate the facts of the accident to determine if the UM coverage would apply and, if so, how much

of the available policy limits would be owed to Mr. Uhl.  [Doc. 49-5; Doc. 49 at 3 ¶ 4; Doc. 53 at 2 ¶ 4].[2]

5.      Progressive completed its liability investigation to its satisfaction on December 8, 2022.  [Doc. 49-9 at 24–25; Doc. 49 at 6 ¶ 13; Doc. 53 at 4 ¶ 13].

6.      That same day, Progressive authorized payment of the $500,000 UM policy limit benefit to Mr. Uhl.  [Doc. 49-9 at 25; Doc. 49 at 6 ¶15; Doc. 53 at 4 ¶ 15].

7.      That same day, Progressive informed Mr. Uhl of its decision to pay him the $500,000 UM policy limit benefit subject to addressing liens.  [Doc. 49-9 at 26; Doc. 49 at 6 ¶ 16; Doc. 53 at 4 ¶ 16].

8.      Progressive issued payment of the $500,000 UM policy limit benefit approximately four months later, on April 6, 2023.  [Doc. 49-15; Doc. 49-16; Doc. 49 at 7 ¶ 18; Doc. 53 at 5 ¶ 18].

9.      Progressive's voluntary payment of the $500,000 UM policy limit was made without reservation of any rights by Progressive.  [Doc. 49-15; Doc. 49-17; Doc. 49 at 7 ¶ 19; Doc. 53 at 5 ¶ 19].

10.     Progressive has not asserted counterclaims against Mr. Uhl and is not seeking recoupment of UM benefits paid.  [Doc. 53 at 8 ¶ 13; Doc. 58 at 7 ¶ 13].

---

[2] "When the driver of the vehicle cannot be identified, that driver is held, for purposes of UM coverage, to be uninsured."  *Mavashev v. Windsor Ins. Co.*, 72 P.3d 469, 470–71 (Colo. App. 2003).   The Parties dispute whether Progressive determined that an unidentified motorist's negligence caused the Accident.  *Compare* [Doc. 49 at 3 ¶ 4 ("Progressive ultimately determined that the accident was caused by a negligent motorist who forced plaintiff off the road.")], *with* [Doc. 53 at 4 ¶ 13 ("Mr. Kern determined that the facts surrounding the accident and whether another vehicle was involved were not clear. Nevertheless, . . . Progressive ultimately decided to give Plaintiff the 'benefit of the doubt' and to extend UM coverage to pay Plaintiff policy limits of $500,000." (citing [Doc. 53-1 at 43:14–44:14, 51:5–11])].

### III.    Application

Mr. Uhl seeks summary judgment in his favor on Progressive's coverage-related Second and Sixth "affirmative defenses," which challenge whether Mr. Uhl's claim for UM benefits is covered under the Policy.[3]  *See generally* [Doc. 49].  Mr. Uhl asks this Court to declare as a matter of law that he is not required to reestablish his entitlement to his UM policy limit benefits undisputably already paid under the Policy in order to prevail on his bad faith claims.  *See* [*id.*].  Progressive responds that (1) Colorado courts have required plaintiffs to prove coverage and entitlement to benefits when litigating bad faith claims, even when *some* of the UM benefits have been paid without a reservation of rights, and (2) "[t]here is no reason why payment of UM benefits in the amount of full policy limits as opposed to payment of UM benefits in partial amounts should warrant a departure from well-founded Colorado law regarding Plaintiff's burden of proving his claims."  [Doc. 53 at 18].  Plaintiff counters that Defendant's reliance on cases involving breach of contract claims is misplaced.  [Doc. 58 at 12–15].  The Court respectfully agrees with Plaintiff.

Progressive is correct that an insured bears the burden to prove coverage and entitlement to benefits in a UM *breach of contract* case.  *See, e.g., Giertz v. State Farm Mut. Auto. Ins. Co.*, No. 22-1114, 2023 WL 3728197, at *3 (10th Cir. May 26, 2023).  The non-binding legal authority on which Progressive relies establishes only that Colorado

---

[3] In its Answer, Progressive asserts as its Second Defense that "Plaintiff's recovery of any benefits under the insurance policy at issue is subject to and limited by all the terms, conditions, limitations and exclusions of said policy, including but not limited to, applicable policy limits and or limits of liability, setoffs and primacy conditions."  [Doc. 53 at 8–9 ¶ 13; Doc. 58 at 7 ¶ 13].  Progressive asserts as its Sixth Defense that "Plaintiff has failed to submit evidence and reasonable proof of the coverage upon which his claims for recovery are founded."  [Doc. 53 at 9 ¶ 13; Doc. 58 at 7 ¶ 13].

courts have required plaintiffs asserting *breach of contract* claims to prove coverage and entitlement to benefits when litigating derivative bad faith claims, even when some benefits owed have been paid without a reservation of rights.  *See, e.g.*, *Domokos v. Shelter Mutual Ins. Co.*, 416 F. Supp. 3d 1209, 1217–18, 1230 (D. Colo. 2019) (insured rejected insurer's offer of 30% of available underinsured ("UIM") policy limit with a reservation of rights regarding causation and noncoverage, demanded policy limits, and sued for breach of contract and bad faith when parties did not reach agreement on UM benefits owed); *Trujillo v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-00410-WJM-NRN, 2019 WL 3996882, at *3 (D. Colo. Aug. 23, 2019) (insurer paid insured roughly 60% of her UIM policy limit and insured sued for breach of contract *and* bad faith, claiming she was entitled to policy limits); *Gallegos v. Safeco Ins. Co. of Am.*, 646 F. App'x 689, 694–96 (10th Cir. 2016) (after insurer initially denied coverage and insureds sued for breach of contract, bad faith, and unreasonable delay/denial, insurer later paid the disputed benefits subject to a reservation of rights to dispute liability and coverage).

Plaintiff's only claims in this case, however, are extra-contractual claims for common law bad faith and statutory delay.  "'[T]he only element at issue in the statutory claim is whether an insurer [delayed] benefits without a reasonable basis.'"  *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 846 (Colo. 2018) (quotation omitted).  "To prevail on [a common law bad faith] claim, the insured 'must establish that the insurer acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for [delaying] the claim.'"  *Id.* (quotation omitted).  In other words, entitlement to benefits is not an element of either claim.

Progressive characterizes its Second and Sixth Defenses as going to Plaintiff's requirement to "prove coverage and entitlement to UM benefits as an element of Plaintiff's common law bad faith claim . . . and statutory unreasonable delay claim." [Doc. 53 at 10]. But Progressive fails to cite, and this Court did not independently find, any legal authority that directly addresses whether proof of entitlement to benefits is a prerequisite to a plaintiff's bad faith claims where policy limits have been unconditionally paid to the insured. At least one court in this District has rejected the argument that an insured asserting only a statutory delay/denial claim must also prove entitlement to UM benefits. *See Peden v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-00982-LTB-KLM, 2018 WL 3496735, at *2 (D. Colo. July 20, 2018) (rejecting insurer's argument that the plaintiff was required to prove entitlement to UM benefits because, while true in "UIM breach of contract cases," the plaintiff's only claim was for unreasonable delay/denial). Moreover, as the Tenth Circuit recognized in *Giertz*,

> the relevant Colorado authorities make clear that the facts necessary to prove a breach of contract claim—liability of the underinsured motorist and damages to the insured that exceed the underinsured motorist's policy limits—are entirely different from the facts necessary to prove the bad faith claims. The breach-of-contract claim concerns the circumstances of the accident and the extent of insured's damages; the bad-faith claims concern the practices the insurer employed to evaluate the insured's UIM claim.

*Giertz*, 2023 WL 3728197, at *3. Thus, by arguing that Plaintiff must "meet his burden of establishing coverage and entitlement to benefits under the Policy by proving that the accident was caused by a legally at-fault motorist other than Plaintiff," [Doc. 53 at 17], Defendant effectively asserts that Plaintiff must establish "the facts necessary to prove a breach of contract claim," *Giertz*, 2023 WL 3728197, at *3. As detailed below, however, coverage is no longer in play after Progressive's unconditional payment of policy limits, which mooted any potential breach of contract claim.

**B.    Plaintiff's Entitlement to Benefits is Not a "Live Issue"**

Where UM benefits have been paid in full and a plaintiff asserts only claims for bad faith breach of insurance contract and unreasonable delay of payment, the plaintiff's entitlement to the UM benefits is no longer a "live issue."  *See Schultz*, 429 P.3d at 846. Plaintiff relies on *Schultz* to argue that the Colorado Supreme Court has "effectively rejected" the argument that an insurer that pays full policy limits can resurrect a dispute over coverage in a later bad faith/unreasonable delay lawsuit.  [Doc. 49 at 13–14].  This Court respectfully agrees.

The plaintiff in *Schultz* was in a car accident caused by another driver, leading the plaintiff to undergo several surgeries.  *Schultz*, 429 P.3d at 846.  The other driver's insurance company settled with the plaintiff for policy limits, and the plaintiff then claimed UM/UIM benefits under her GEICO policy.  *Id.*  Months later, GEICO paid the plaintiff her UM/UIM policy limits without requesting that she undergo an independent medical examination ("IME").  *Id.*  The plaintiff later initiated a lawsuit asserting claims for bad faith breach of an insurance contract and statutory delay.  *Id.*  GEICO denied liability, disputed the extent and cause of the plaintiff's claimed injuries, and asserted that coverage for her surgeries was "fairly debatable" at the time it made its coverage decision due to her pre-existing medical conditions.  *Id.*

To support these defenses, GEICO requested that the plaintiff undergo an IME. *Id.*  At a hearing on the issue, GEICO claimed that it made a business decision to pay the plaintiff's UM/UIM claim despite unresolved questions as to coverage.  *Id.*  Even so, GEICO argued that coverage was again a "live issue" with respect to the plaintiff's bad faith delay claims because "[y]ou can't delay a benefit that was never owed."  *Id.*  The

state district court agreed with GEICO and ordered the plaintiff to submit to an IME.  *Id.*
The plaintiff then appealed.

On appeal, GEICO asserted that the plaintiff could not prove her bad faith claims
"without getting into" coverage of the underlying UIM claim because "implicit in Ms.
Schultz's allegations of unreasonable conduct [was] the unproven *assumption* that there
[was] indeed [coverage for] her . . . surgeries."  Def.'s Resp. to Order to Show Cause,
*Schultz*, 429 P.3d 844 (No. 18SA135), 2018 WL 7813747, at *14–15.[4]  In other words,
GEICO argued that it needed to "get[] into" issues of coverage to defend against the
plaintiff's extra-contractual claims because the plaintiff's entitlement to the benefits was
"unproven."  *Id.*  GEICO also argued that

> [p]unishing insurers for making business decisions to pay questionable
> claims or to pay claims based on incomplete information, thereby giving the
> benefit of the doubt to their insureds, would have a chilling effect on making
> similar liberal payment decisions in the future if those decisions could
> ultimately compromise and restrict the insurer's ability to fully defend
> against potential extra-contractual claims.

*Id.* at *17.

The Colorado Supreme Court disagreed.  First, it described the elements of the
plaintiff's bad faith/delay claims, noting that with respect to both common law bad faith
and statutory delay claims, the reasonableness of "an insurer's decision to [delay] benefits
to its insured must be evaluated based on the information before the insurer at the time
of that decision."  *Schultz*, 429 P.3d at 847 (cleaned up).  The court also explained that
"in defending against a bad faith claim by attempting to show that it acted reasonably, an

---

[4] The Court may take judicial notice of state court records.  *See* Fed. R. Evid. 201; *St.
Louis Baptist Temple v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held
that federal courts . . . may take notice of proceedings in other courts, both within and
without the federal judicial system, if those proceedings have a direct relation to matters
at issue."); *Tal v. Hogan*, 453 F.3d 1244, 1264, n.24 (10th Cir. 2006).

insurer may present all of the information that it considered at the time it made the decision to delay . . . the claim." *Id.* (citation omitted).

Notably, *Schultz* does not identify proof of entitlement to the benefits already paid as an element of the plaintiff's bad faith claims. Instead, the *Schultz* court looked only to the "coverage decision" actually made by GEICO—in other words, "the decision . . . to pay Schultz the limits of her UM/UIM coverage." *Id.* at 849. Thus, "the issue of coverage" was limited to GEICO's "fair debatability" defense—i.e., whether "coverage was 'fairly debatable,' given that the adjuster had identified questions about the cause of Schultz's knee replacements from the outset of the evaluation of her claim." *Id.* at 848. The court noted that fair debatability is "not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case." *Id.* (quotation omitted). Instead, the fair debatability of coverage is merely "a factor in determining whether an insurer acted reasonably." *Id.*

The Court finds that the Colorado Supreme Court's reasoning in *Schultz* applies to this case. By focusing on the reasonableness of GEICO's coverage decision, the court implicitly rejected GEICO's attempts to resurrect issues of coverage and entitlement to UM benefits it had already paid in full; because GEICO made the coverage decision to pay policy limits, coverage and entitlement to benefits were no longer in play. Here, too, Progressive concedes that it "ultimately decided to give Plaintiff the 'benefit of the doubt' and to extend UM coverage and to pay Plaintiff policy limits." [Doc. 53 at 2 ¶ 4 (citing [Doc. 53-1 at 44:5–14, 51:5–11])]. Thus, Progressive effectively conceded coverage and Plaintiff's entitlement to UM benefits upon its coverage decision to pay policy limits.

Progressive's arguments against application of *Schultz* are unavailing. *See* [Doc. 53 at 19–20]. First, *Schultz* is not factually distinguishable in ways that affect this Court's analysis. In both cases, the insurers gave the insureds "the benefit of the doubt" by paying UM policy limits without reservation; the insureds later initiated lawsuits asserting only claims for bad faith breach of insurance contract and unreasonable delay of payment; and the insurers asserted coverage defenses premised on the argument that the insureds' entitlement to the already-paid benefits was "unproven."

Second, while *Schultz* was decided in the context of a discovery dispute, the decision turned on the critical fact that coverage was no longer in controversy because policy limits were paid in full before the plaintiff filed suit. Cases decided after *Schultz* further demonstrate the importance of this distinction. *See, e.g.*, *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1207–08 (D. Colo. 2022) (distinguishing facts because "the insurer had not conceded coverage like the insurer in *Schultz*"); *Stovall v. State Farm Mut. Auto. Ins. Co.*, No. 23-cv-02836-CNS-NRN, 2024 WL 4519189, at *3 (D. Colo. Oct. 17, 2024) (collecting cases); *Anchondo-Galaviz v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-01322-JLK-NYW, 2019 WL 11868519, at *10 (D. Colo. July 19, 2019) ("This court finds *Schultz* distinguishable because in that case . . . the only remaining issue was whether the benefits paid to the plaintiff were unduly delayed."); *Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.*, No. 20-cv-00552-CMA-NRN, 2020 WL 5406130, at *5 (D. Colo. Sept. 9, 2020) ("This case, by contrast, is not just about bad faith, but also about whether there is any coverage at all . . . . In *Schultz*, the insurer had paid full policy limits, so the issue of coverage was no longer in play." (emphasis added)); *Meumann v. Peerless Indemnity Ins. Co.*, No. 19-cv-03554-CMA-KMT, 2020 WL

4016111, at *2 (D. Colo. July 15, 2020) ("In [*Schultz*], . . . coverage for the claims had been undisputedly previously made by the insurer."); *D'Antonio v. Am. Fam. Mut. Ins. Co.*, No. 21-cv-02363-PAB-NRN, 2022 WL 3681984, at *2 (D. Colo. Aug. 25, 2022) (agreeing that "because the parties dispute the coverage, and defendant has not made a final coverage decision, *Schultz* does not apply.  In other words, because defendant has not made its coverage decision – since plaintiff demands more benefits than have been paid – the *Schultz* rule that an insurer cannot retroactively justify its coverage decision is irrelevant."); *Ford v. State Farm Fire & Cas. Ins. Co.*, No. 22-cv-02051-REB-MEH, 2024 WL 1832465, at *4 & n.4 (D. Colo. Jan. 10, 2024) (applying *Schultz* to conclude that the insurer could not "reopen" its final coverage decision on the payment of the insured's roof repair damages).

Finally, Progressive's third argument—i.e., the fact that *Schultz* does not address any of the legal authority on which Progressive relies for its argument that Mr. Uhl must still prove his entitlement to benefits—is neither surprising nor persuasive.  As discussed above, Progressive's reliance on UM breach of contract cases is misplaced and, for the same reasons, these cases are inapposite to *Schultz* (and to the issue before this Court).

Thus, applying the rationale of *Schultz* to the undisputed fact that Progressive paid Mr. Uhl his UM policy limits without reservation, the Court concludes that coverage is not a live issue.  Consistent with *Schultz*, "[Progressive] is certainly entitled to argue to a jury that its pre-litigation payment[] demonstrate[s] the reasonableness of its coverage decision[]."  *Galinkin v. Safeco Ins. Co.*, No. 21-cv-02855-REB-SKC, 2022 WL 18777079, at *4 (D. Colo. Dec. 21, 2022); *cf. Slavin v. Garrison Prop. & Cas. Ins. Co.*, No. 14-cv-01839-LTB-KMT, 2017 WL 2928030, at *3, *5 (D. Colo. July 10, 2017) (noting question

of coverage not at issue where insurer paid policy limits during litigation but holding in abeyance whether evidence of *timing* of coverage decisions, as part of reasonableness of insurer's claims handling process, was admissible at trial), *aff'd*, 805 F. App'x 561 (10th Cir. 2020).   But the only remaining "issue of coverage" is the reasonableness of Progressive's "coverage decision"—i.e., its decision to pay Plaintiff his UM policy limits. *See Schultz*, 429 P.3d at 849; *see also* 17 Couch on Ins. § 239:123 (3d ed., Nov. 2024 Update) ("An insurer which voluntarily makes payments under a policy cannot thereafter deny that . . . there is coverage for the occurrence in connection with which it has made the payment.").

In sum, the Court concludes as a matter of law that Plaintiff is not required to reestablish his entitlement to his UM policy limits to prevail on his bad faith claims. Accordingly, the Motion for Partial Summary Judgment is **GRANTED**, and Plaintiff is entitled to summary judgment in his favor on Defendant's Second and Sixth Defenses.[5]

## IV.    Plaintiff's Rule 72(a) Objection

In light of the Court's resolution of Plaintiff's Motion for Partial Summary Judgment, the Court turns to Plaintiff's objections, [Doc. 74 (the "Objection")], to Judge Prose's order granting Defendant's motion to compel discovery relating to Plaintiff's entitlement to UM

---

[5] Because the Court has concluded that coverage is no longer a live issue under *Schultz*, it need not reach the other arguments presented by Plaintiff's Motion for Partial Summary Judgment with respect to waiver, estoppel, mootness, or whether requiring Plaintiff to "re-prove" his entitlement to his UM policy limits to prevail on his bad faith claims would be tantamount to "unnecessary and excessive procedural hurdles" already "expressly prohibited by law."  [Doc. 49 at 9–12, 14–17].

benefits, *see Uhl v. Progressive Direct Ins. Co.*, No. 23-cv-01904-NYW-SBP, 2024 WL 5187568 (D. Colo. Dec. 20, 2024) (the "Discovery Order").[6]

As of Judge Prose's ruling, whether Mr. Uhl's entitlement to benefits was at issue constituted both an unresolved merits question and an issue central to the resolution of Progressive's motion to compel. *Id.* Judge Prose expressly recognized that the ultimate relevance of the discovery sought by the motion to compel hinged on this Court's then-pending ruling on Plaintiff's Motion for Partial Summary Judgment. *See id.* at *5 (finding if "entitlement to benefits is not at issue, then Progressive seeks discovery that would have no bearing on this case," but if entitlement to benefits *is* at issue, "then the discovery sought by Progressive is relevant"). Thus, Judge Prose "[d]eclin[ed] to choose between the parties' competing merits arguments," and found that she could not conclude that the discovery sought by Progressive was *not* relevant absent a decision on the merits from the undersigned. *Id.* at *6. Accordingly, Judge Prose found that Mr. Uhl's refusal to respond to Progressive's discovery requests was not justified. *Id.*

In his Objection to the Discovery Order, Mr. Uhl asks this Court to "defer requiring [him] to produce the disputed evidence until and unless the Court denies Plaintiff's Motion for Summary Judgment." [Doc. 74 at 7]. Because this Court has granted Plaintiff's Motion for Partial Summary Judgment and determined that Mr. Uhl's "entitlement to benefits is not at issue," Progressive "seeks discovery that would have no bearing on this case." *See Uhl,* 2024 WL 5187568, at *5. Accordingly, the Objection is **SUSTAINED** insofar as Judge

---

[6] When a magistrate judge issues an order on a non-dispositive matter, "[a] party may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

Prose ordered Mr. Uhl to respond to the discovery requests, *id.* at *8, and **OVERRULED as moot** insofar as Mr. Uhl asks for relief from the Discovery Order pending resolution of Plaintiff's Motion for Partial Summary Judgment.[7]

## MOTION TO AMEND

### I.    Legal Standard

Ordinarily, Rules 15(a)(2) and 16(b)(4) of the Federal Rules of Civil Procedure would apply when, as here, a party seeks to amend its pleading after the deadline set in the Scheduling Order.  *See Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).  Where the proposed amendments concern exemplary damages, however, Colo. Rev. Stat. § 13-21-102 governs.  *See Louradour v. United Launch All., L.L.C.,* No. 20-cv-00608-RMR-NYW, 2021 WL 4947316, at *2 (D. Colo. Sept. 9, 2021) (analyzing whether Rules 15 and 16 or Colo. Rev. Stat. § 13-21-102 apply to a motion to add exemplary damages).

Pursuant to § 13-21-102(1.5)(a), a plaintiff cannot move for exemplary damages in the initial pleading and may seek to amend the pleading to add a claim for exemplary damages "only after the exchange of initial disclosures pursuant to Rule 26 of the Colorado Rules of Civil Procedure," and must establish prima facie proof of a triable issue.  *See* Colo. Rev. Stat. § 13-21-102(1.5)(a).  In finding that there is no direct conflict between this statute and the Federal Rules of Civil Procedure, and that application of the

---

[7] Plaintiff also requests that certain "portions of the [Discovery] Order be stricken," [Doc. 74 at 10], on grounds that the Discovery Order "erroneously invades the province of the jury and Article III court[s]" by "adopting Progressive's incorrect disputed factual assertions," [*id.* at 7 (capitalization altered)].  However, details set forth in the background section of the Discovery Order are neither undisputed facts nor findings of fact that can be used at trial or other proceedings.  Accordingly, this aspect of the Objection is **OVERRULED**.

statute would not necessarily result in forum shopping or the inequitable administration of the law, courts in this District have held that § 13-21-102, rather than Rules 15(a) or 16(b), controls whether to permit the amendment of a claim for exemplary damages.  *See Wollam v. Wright Med. Grp., Inc.*, No. 10-cv-03104-DME-BNB, 2012 WL 4510695, at *9 (D. Colo. Sept. 30, 2012) (applying § 13-21-102 to motion to amend to add exemplary damages claim); *Witt v. Condos. at the Boulders Ass'n,* No. 04-cv-02000-MSK-OES, 2006 WL 348086, at *7 (D. Colo. Feb. 13, 2006) (finding the court must give effect to Colorado statute in evaluating whether exemplary damages claim properly brought in diversity action); *Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007) (applying *Jones v. Krautheim,* 208 F. Supp. 2d 1173, 1179 (D. Colo. 2002)).[8]  Even with the application of § 13-21-102, however, the court may deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice.  *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007).

Section 13-21-102 provides that an award of exemplary damages is permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct."  Colo. Rev. Stat. § 13-21-102(1)(a).  Here, Mr. Uhl alleges that Progressive's actions were willful and wanton.  *See generally* [Doc. 50].  "'[W]illful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences,

---

[8] The Court notes that other courts within this District have applied Rules 15 and 16 to motions to add exemplary damages.  *See, e.g.*, *Lederman v. Bos. Sci. Corp.*, No. 21-cv-02269-NRN, 2023 WL 2446220, at *1–2 (D. Colo. Mar. 9, 2023); *Fiechtner v. Am. Fam. Mut. Ins. Co.*, No. 09-cv-02681-REB-MEH, 2010 WL 5185490, at *3 (D. Colo. Oct. 19, 2010).

or of the rights and safety of others, particularly the plaintiff."  Colo. Rev. Stat. § 13-21-102(1)(b).  "Simple negligence cannot support such an award"; rather, "where a defendant is conscious of both its conduct and the existing conditions, and knew or should have known that injury would result, the requirements of [§] 13-21-102 are met."  *Blood v. Qwest Servs.*, 224 P.3d 301, 314 (Colo. App. 2009).  The purpose of the award of punitive damages is to punish the wrongdoer, not compensate for injuries.  *See Lira v. Shelter Ins.*, 913 P.2d 514, 517 (Colo. 1996).

As to the requirement of a prima facie showing, "[p]rima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact."  *Stamp*, 172 P.3d at 449 (citation omitted).  Such proof is established by "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution."  *Id.* (quoting *Leidholt v. Dist. Ct.*, 619 P.2d 768, 771 n.3 (Colo. 1980)).  Parties may offer this proof in the form of discovery and by evidentiary means.  *Id.*  "The question of whether the plaintiff has established sufficient proof to add a claim for exemplary damages lies within the sound discretion of the trial court."  *Id.* (citation omitted).  In reviewing the Motion to Amend, the Court considers only the "preliminary question" of whether Plaintiff has made a prima facie showing that the injury complained of is attended by willful and wanton conduct, not whether he will ultimately prevail.  *Am. Econ. Ins. Co.*, 2007 WL 160951, at *4.

## II.    Analysis

In his Motion to Amend, Plaintiff seeks to add a claim for exemplary damages based on Progressive's improper and unguided lien investigation stemming from (a) Progressive's failure to train its adjusters on, or implement reasonable standards for, addressing liens; and (b) Mr. Kern's incompetent investigation of the potential medical

liens on the claim.  *See generally* [Doc. 50].   In opposing the Motion to Amend, Progressive argues that it should be denied because Mr. Uhl fails to meet the prima facie evidence standard required to support a claim for exemplary damages and fails to show good cause under Rule 16(b).  *See* [Doc. 54].  The Court first considers whether Mr. Uhl has made a prima facie showing of a triable issue of exemplary damages.

### A.     Prima Facie Evidence for Exemplary Damages

Prima facie evidence is that which, unless rebutted, establishes a fact.   *See Blatchley v. Cunningham*, No. 15-cv-00460-WYD-NYW, 2017 WL 4333992, at *4 (D. Colo. Mar. 29, 2017) (quoting *Stamp*, 172 P.3d at 449).  In reviewing Mr. Uhl's assertions, the Court must view the evidence in a light most favorable to Mr. Uhl.  *Hendrickson v. Doyle*, No. 14-cv-02013-WJM-KLM, 2015 WL 2106225, at *3 (D. Colo. May 4, 2015); *cf. Leidholt*, 619 P.2d at 771 ("The trial judge should grant the plaintiff some leeway in establishing his prima facie case.").  The evidence need only make a prima facie showing of willful and wanton behavior—and need not satisfy the threshold to "defeat a motion for summary judgment or to result in a jury verdict in Plaintiff's favor."  *Hendrickson*, 2015 WL 2106225, at *3.

Plaintiff primarily relies on the deposition testimony of Mr. Kern, the adjuster that Progressive assigned to Mr. Uhl's claim, to support his claim for exemplary damages. *See generally* [Doc. 50].   Plaintiff argues that his claim for exemplary damages is supported by (a) Mr. Kern's admissions regarding the lack of training and education provided by Progressive with respect to medical liens against UM benefits; and (b) Mr. Kern's failure to use the resources available to him to aid in his investigation and handling

of potential liens.  *See* [*id.* at 6–13].  In support of these contentions, Plaintiff points to the

following evidence:

- While Progressive trained Mr. Kern to look for liens on every claim, it did not provide training on how to look for liens.  [Doc. 50-5 at 82:11–83:10].

- Mr. Kern was neither trained by Progressive nor otherwise aware of the potential differences between a health insurer's ability to lien a liability policy versus a UM policy.  [*Id.* at 84:13–85:10].

- Mr. Kern was not aware of any written Progressive policies or standards delineating private health insurance carriers' possible interests or claims, [*id.* at 85:11–16]; regarding TriWest's possible interests, [*id.* at 85:17–21]; addressing whether TriWest would have a lien against a UM policy or how to handle such a lien, [*id.* at 85:22–86:2]; or providing procedures for an adjuster to follow when payment of benefits is owed and the adjuster suspects outstanding liens, [*id.* at 86:11–87:5].

- Mr. Kern was not aware of Colorado law addressing the validity of liens against a UM policy, [*id.* at 91:8–21], or prohibitions against certain subrogated interests or liens against UM policies, [*id.* at 92:22–93:11].

- Even after Mr. Uhl informed Mr. Kern that TriWest was the insurer to contact with respect to any VA-related treatment, Mr. Kern called the VA and not TriWest.  [*Id.* at 112:24–115:22].

- Mr. Kern was not aware of TriWest when Mr. Uhl informed him of its involvement.  [*Id.* at 75:24–79:7].

- Mr. Kern did not research whether TriWest would have a lien, contrary to what Mr. Kern told the Uhls about his research.  [*Id.* at 79:8–23].

- Mr. Kern did not consult with available legal counsel about the liens, [*id.* at 79:24–82:10], nor did he obtain a legal opinion or analysis as to the viability of or potential for any claims a health insurer might have on Mr. Uhl's claim, [*id.* at 83:11–15].

- Mr. Kern did not know and did not research whether any state or federal laws address a federal medical facility's ability to place a lien against a UM policy.  [*Id.* at 83:17–84:12].

- Mr. Kern did not consult with supervisors about how to handle a situation where outstanding liens were still possible against benefits that Progressive determined were owed to an insured.  [*Id.* at 87:6–13].

- Mr. Kern did not review either potential lienholders' contracts to determine any rights to recover money, assert a lien, or hold a subrogated interest.  [*Id.* at 89:25–90:10, 90:19–25, 91:1–7].

- Despite information about a potential lien from Blue Cross Blue Shield ("BCBS"), Mr. Kern never reached out to BCBS, [*id.* at 122:23–123:5], and did nothing to investigate whether BCBS did, in fact, have a lien, [*id.* at 124:8–10, 124:15–17].

- Mr. Kern did not obtain any new information about any potential medical liens between December 8, 2022 (when he first agreed to make payment), and April 6, 2023 (when payment was made).  [*Id.* at 100:2–13].

- Mr. Kern never received a notice of a lien at any point during his handling of Mr. Uhl's claim.  [*Id.* at 66:20–25; 72:8–11; 90:8–18].

- Progressive paid Mr. Uhl's full $500,000 policy limit despite his counsel's refusal to agree to Progressive's request that counsel hold funds in a trust account to satisfy any potential liens.  [*Id.* at 97:19–98:9; 100:8–13].

Plaintiff bolsters the foregoing factual evidence with the opinion of his bad faith expert witness, Russell Kile, a former claims consultant/supervisor with several decades of experience in the insurance industry.  [Doc. 50 at 14; Doc. 50-9].  Mr. Kile opines that Progressive "did not conduct a prompt investigation into Mr. Uhl's UM claim," and enumerates various behaviors by Progressive that "are not consistent with industry standards for conducting a prompt and thorough investigation."  [Doc. 50-9 at 3].  Mr. Kile identifies the following as substandard behaviors:

> Progressive delayed nearly three months after receiving information about Mr. Uhl's health insurer (TriWest).  They then asked for the same information from Mr. Uhl again.  Once they received this information, they failed to use it and chose to contact the VA.  It took nearly two and a half months to follow up on their initial request to the VA.  Progressive never documented any attempt to follow up with Blue Cross Blue Shield for any liens or right of reimbursement claim.  Progressive did not document any discussions with peers and management in weekly meetings, discussion with in-house counsel, or compliance with their internal guidelines to seek information about Colorado statutes.

[*Id.*].  Mr. Kile opines that, if Progressive had followed its own claims handling standards and if Mr. Kern had consulted with claims management or legal counsel earlier, it could have timely paid Mr. Uhl's UM benefits.  [*Id.* at 2].

The evidence supports a finding that Progressive may not have conducted a reasonable investigation of the alleged liens against Plaintiff's UM claim and, instead, may have deliberately slow-played payment on the claim.  Mr. Kern's testimony appears to acknowledge Progressive's lack of training on handling liens in the UM context, Mr. Kern's lack of knowledge of the law as to the applicability of the liens he was investigating, as well as Mr. Kern's failure to utilize the resources available to him to ascertain the proper course of action with respect to liens against a UM policy.  The Court finds that this evidence, combined with Mr. Kiles's expert opinion regarding these issues, satisfies Plaintiff's burden.  *See Franklin D. Azar & Assocs., P.C. v. Exec. Risk Indem., Inc.*, No. 22-cv-01381-RMR-NRN, 2023 WL 7130144, at *3 (D. Colo. Oct. 10, 2023) (granting motion to amend to add exemplary damages claim where proffered evidence included claim handler's testimony that he "lacked knowledge of the law that applies to the claims [he] handled and . . . received no training on such matters" from the insurer, and "did not consult the [appropriate resources] in making his determination on coverage for the subject claim," along with expert opinion that this disregard for Colorado law resulted in a bad faith breach of insurance contract); *Linder v. Horace Mann Ins.*, No. 19-cv-02071-CMA-KMT, 2020 WL 13490512, at *4 (D. Colo. Mar. 5, 2020) (evidence that adjuster misstated governing law satisfied insured's burden under § 13-21-102(1)(b)); *State Farm Mut. Auto. Ins. v. Fisher*, No. 08-cv-01687-REB-MEH, 2009 WL 1011194, at *4 (D. Colo. Apr. 15, 2009) (finding evidence that claim adjuster "lacked familiarity with the governing

case law," as well as expert testimony that insurer "engaged in bad faith" to be sufficient to show willful and wanton conduct to support amendment to add punitive damages).

Plaintiff's proffered evidence also appears to demonstrate that Progressive's stated reason for waiting nearly four months to pay Mr. Uhl's claim is pretextual, insofar as Mr. Kern made no attempt to ascertain the law governing liens against Mr. Uhl's claim; did little to investigate any potential liens over the course of several months; and then promptly paid the claim (without any reservations) after Mr. Uhl obtained counsel. The proffered evidence—although it may ultimately be rebutted—is sufficient to allow a trier of fact to conclude that Progressive "heedlessly and recklessly, without regard to [Plaintiff's] rights," slow-played payment of Plaintiff's UM claim. *See 2506 6th St., LLC v. WestGUARD Ins.*, No. 21-cv-01673-WJM-MDB, 2022 WL 17335952, at *6 (D. Colo. Nov. 30, 2022) (evidence that insurer was slow-playing claims process over extended period helped "satisfy the relatively low threshold" for amendment to add punitive damages). In other words, the trier of fact may conclude that Progressive was "conscious of [its] conduct and the existing conditions and knew or should have known that injury [in the form of a months-long delay in payments] would result." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).

Defendant responds with three arguments as to why leave to amend should be denied. First, Defendant argues that Plaintiff has "provided no case law to support his position that an insurance company's holding payment subject to investigation into governmental liens . . . rises to the egregious level necessary to warrant exemplary damages." [Doc. 54 at 14]. Second, Defendant contends that any "failure to start investigating Plaintiff's liens as of September 13, 2022," is not prima facie evidence of

willful and wanton conduct "because no obligation to pay existed at that time." [*Id.* at 15]. Third, Progressive argues that Plaintiff fails to make a prima facie showing of scienter as required to support exemplary damages. [*Id.* at 16]. According to Progressive, Plaintiff's allegations show, at best, incompetence and are thus "insufficient grounds alone to establish a prima facie case." [*Id.* at 18]. Plaintiff replies to each of Defendant's arguments in turn. *See generally* [Doc. 59].

At the outset, the Court notes that much of Defendant's Response amounts to "attempts to refute Plaintiff's proffered evidence by providing additional context." *Schimek v. Owners Ins. Co.*, No. 16-cv-02197-PAB-STV, 2017 WL 3621833, at *5 (D. Colo. Aug. 23, 2017). As Plaintiff points out in his Reply, the inquiry is not whether Mr. Uhl could defeat summary judgment (or obtain a jury verdict) on his demand for exemplary damages, *Hendrickson*, 2015 WL 2106225, at *3, but whether Plaintiff has presented facts sufficient to show that Progressive's bad faith was attended by circumstances of willful and wanton conduct. Mr. Uhl need only present facts showing that Progressive engaged in "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others." Colo. Rev. Stat. § 13-21-102(1)(b). Thus, to the extent "Defendant . . . has highlighted factual disputes between the Parties with regard to Plaintiff's proposed claim for exemplary damages," *Schimek*, 2017 WL 3621833, at *6, these arguments do not establish that Plaintiff's factual contentions lack evidentiary support—particularly when the Court must view these facts in the light most favorable to Plaintiff. To that end, the Court finds that Plaintiff has met his burden to sufficiently identify facts that establish a prima facie case of willful and wanton conduct.

To support its contention that Plaintiff has failed to bring forward facts establishing the requisite scienter for exemplary damages claims, Defendant cites *Graham v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-00920-REB-NYW, 2020 WL 9720368, at *6 (D. Colo. June 30, 2020), *report and recommendation adopted*, 2021 WL 2092813 (D. Colo. Mar. 31, 2021). The Court is respectfully unpersuaded by Defendant's citation to *Graham* for at least two reasons.

In *Graham*, this Court noted that the plaintiff—in relying on his expert's summary of the insurer's "incompetence"—failed to point to any specific facts demonstrating that his insurer's representatives' respective or collective actions were done heedlessly and recklessly. *Id.* Here, Plaintiff alleges "more than the . . . bad acts that underlie [his] claim for common law bad faith." *See id.* As Plaintiff explains in his Reply, "the point of [his] request for punitive damages" is Progressive's failure to provide Mr. Kern with "the tools (particularly training and supervision) necessary to address liens . . . competently and timely." [Doc. 59 at 10]. The specific facts in his Motion to Amend and enumerated in part above support Plaintiff's theory of punitive damages.[9] *Cf. Espinoza v. Am. Fam. Mut. Ins. Co.*, No. 08-cv-00709-REB-MEH, 2008 WL 4059851, at *2 (D. Colo. Aug. 29, 2008) (finding expert testimony and supporting documentation that insurer violated state law sufficient to support amendment to add claim for punitive damages); *Am. Econ. Ins. Co.*,

---

[9] While neither Party raises the issue, the Court sua sponte addresses whether exemplary damages may attach to Plaintiff's claims. Punitive damages are not available for a statutory claim for unreasonable delay. *Residences at Olde Town Square Ass'n v. Travelers Cas. Ins.*, 413 F. Supp. 3d 1070, 1079 (D. Colo. 2019). However, punitive damages are available for the common-law tort of bad faith breach of contract, *id.* at 1075 (citing *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 682 (Colo. 1994)), and are considered secondary to an underlying claim for actual damages, *Heinrich v. Master Craft Eng'g*, 131 F. Supp. 3d 1137, 1161 (D. Colo. 2015) (quoting *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 213 (Colo. 1984)).

2007 WL 160951, at *3–4 (finding deposition testimony that actions were "deliberate," coupled with expert reports stating that insurer's actions were unreasonable and contrary to generally accepted insurance practices, sufficient to show willful and wanton conduct to support punitive damages).

### B.    Delay

Progressive also argues that Mr. Uhl's Motion to Amend is untimely under Rule 16(b).  *See* [Doc. 54 at 18–21].  As set forth above, the Court does not employ Rules 15 or 16 in determining whether Plaintiff should be permitted leave to amend to add an exemplary damages claim.  Even so, the Court may still exercise its discretion to deny a motion to amend to add exemplary damages on account of "delay, bad faith, undue expense, or other demonstrable prejudice."  *Stamp*, 172 P.3d at 449.  The Court thus considers Progressive's argument that Plaintiff lacks "good cause" for amendment as arguing that leave to amend should be denied due to Plaintiff's delay.

According to Defendant, "Plaintiff has known of Progressive's conduct that he argues substantiates his exemplary damage claim since before he filed his Complaint," and failed to diligently seek leave to add his exemplary damage claim "in a timely manner."  [Doc. 54 at 21].  Specifically, Defendant argues that the Motion to Amend is untimely because (1) Plaintiff alleged in his original Complaint that Progressive "knew its conduct was reasonable [sic] or recklessly disregarded the fact that it was unreasonable," and "was required to have prima facie evidence and a good faith basis for making such allegations in his Complaint," but did not move to amend after initial disclosures were exchanged on September 8, 2023, [*id.* at 20]; (2) Plaintiff did not move to amend before the November 1, 2023 deadline for amending pleadings set forth in the Scheduling Order,

[*id.*]; and (3) Plaintiff waited to seek leave to amend until 72 days "after obtaining all factual information . . . used in support of his motion seeking leave to amend," [*id.*].

Plaintiff replies that Progressive "fails to reconcile the fact that Plaintiff's [Motion to Amend] is premised almost entirely upon new information and evidence obtained" via Mr. Kern's January 2024 deposition and Mr. Kiles's February 2024 expert report.  [Doc. 59 at 4].  Plaintiff explains that he did not have this information because Progressive "was resisting providing relevant evidence" throughout discovery.  [*Id.*].  Plaintiff also points to several cases from this District where motions to add claims for punitive damages were decided based on supporting expert testimony (or the lack thereof).  [*Id.* at 3–4].

The Court finds that Plaintiff did not delay in filing the Motion to Amend.  Facts and evidence obtained through the deposition of Mr. Kern, and the expert report of Mr. Kiles, are central to Plaintiff's proposed exemplary damages claim.  Given that this information was obtained after the deadline for amendment of pleadings, Defendant's first two arguments are unavailing.  *See Lederman v. Bos. Sci. Corp.*, No. 21-cv-02269-NRN, 2023 WL 2446220, at *1–2 (D. Colo. Mar. 9, 2023) ("[U]nder Colorado law, a plaintiff may not demand exemplary damages in the original complaint and, to add such a request, the plaintiff must develop sufficient evidence to at least create a triable issue for the jury on exemplary damages.  In many cases, this will be during the discovery period and after the passage of the deadline set in the scheduling order for amendment of pleadings.")

With respect to the third argument—i.e., that Plaintiff waited too long after obtaining the information to seek leave to amend—the Court finds that Plaintiff was reasonably diligent in seeking leave to amend several weeks after the disclosure of Mr. Kiles's expert report, particularly given the volume of information obtained from Mr. Kern's deposition

and Mr. Kiles's expert report and Progressive's role in delaying Plaintiff's access to this information through discovery earlier in the process. *See Schimek*, 2017 WL 3621833 (granting leave to amend to add request for exemplary damages where plaintiff obtained supporting evidence in the course of discovery).

For these reasons, the Court finds that Mr. Uhl has met his prima facie burden of establishing a triable issue as to whether Progressive engaged in willful or wanton conduct.[10]  Accordingly, the Motion to Amend is respectfully **GRANTED**.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)    Plaintiff's Motion for Partial Summary Judgment [Doc. 49] is **GRANTED**;

(2)    Plaintiff's Motion for Leave to Amend Complaint to Assert Claim for Punitive Damages [Doc. 50] is **GRANTED**;

(3)    Plaintiff shall file a clean copy of his Amended Complaint [Doc. 50-11] as a separate entry on the docket by no later than **February 14, 2025**;

(4)    Plaintiff's F.R.C.P. 72 Objection to (ECF No. 70) Order on Motion to Compel (ECF No. 41) [Doc. 74] is **SUSTAINED in part** and **OVERRULED in part**; and

(5)    Defendant's Motion for Leave to File Response to Plaintiff's F.R.C.P. Rule 72 Objection to (ECF No. 70) Order on Motion to Compel (ECF No. 41) [Doc. 78] is **DENIED as moot**.

---

[10] In so finding, the Court only answers the "preliminary question" of whether Plaintiff has met his burden to make a prima facie case. *Am. Econ. Ins. Co. v. Schoolcraft, M.D.*, No. 05-cv-01870, 2007 WL 160951, at *4 (D. Colo. Jan. 17, 2007).  At this juncture, the Court does not pass on the merits of Mr. Uhl's demand for exemplary damages.

DATED:  February 11, 2025    BY THE COURT:

_____
Nina Y. Wang
United States District Judge